UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN


**KIMBERLY BROWNFIELD**
    Plaintiff

**v.**                                                                                             **No. 1:10CV-00095-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Mary Burchett-Bower. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 13, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on January 8, 2010, by administrative law judge (ALJ) Patrick Kimberlin III. In support of his decision denying Title II benefits, Judge Kimberlin entered the following numbered findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2003.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 15, 2002 through her date last insured of December 31, 2003 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairment: a mood disorder, not otherwise specified, with depressive and anxious features (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, one to three step job instructions and duties, that would be task or object focused and not fast paced.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 17, 1964, and was 39 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 15, 2002, the alleged onset date, through December 31, 2003, the date last insured (20 CFR 404.1520(g)).

(Administrative Record (AR), pp. 526-531).

**Governing Legal Standards**

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal

standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

3

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether

the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Procedural history

1. On August 20, 2003, the plaintiff filed an application for Title II benefits alleging that she became disabled on May 15, 2002 (AR, pp. 83-85).

2. On December 16, 2005, ALJ James Craig issued a denial decision (AR, pp. 321-327).

3. On November 16, 2006, the Appeals Council remanded the matter for a new decision (AR, pp. 329-331).

4. On July 3, 2007, Judge Kimberlin issued a denial decision finding, among other things, that the plaintiff did not have a "severe" impairment through her date last insured, December 31, 2003 (AR, pp. 25-31).

5. On May 27, 2008, the Appeals Council declined to disturb Judge Kimberlin's decision (AR, pp. 8-11).

6. On May 22, 2009, this court remanded the matter to the Commissioner for a new decision because Judge Kimberlin's finding of no severe mental impairment prior to the date last insured was found to be not supported by substantial evidence (AR, pp. 546-550).

7. On December 3, 2009, Judge Kimberlin conducted an administrative hearing at which licensed psychologist Robert Paul, Ph.D., testified with respect to the plaintiff's mental impairments (AR, pp. 679-725).

8. On January 8, 2010, Judge Kimberlin rendered the Commissioner's final decision herein, finding among other things, that during the closed period from May 15, 2002, the alleged onset date, through December 31, 2003, the date last insured, the plaintiff's "severe" mental impairments did not preclude performance of a significant number of jobs in the national economy (AR, pp. 524-532).

9. On May 7, 2010, the plaintiff filed the present complaint seeking judicial review.

10. On September 17, 2010, the plaintiff filed her fact and law summary, to which she appended evidence pertinent to the issue of the date she was last insured for Title II benefits (Docket Entry No. 10).

## The plaintiff's date last insured (DLI)

Individuals are entitled to Title II benefits based upon their payment of federal insurance contribution act (FICA) taxes into the Social Security trust fund. The Social Security Administration maintains an earnings record for each worker. There is a mathematical formula that relates a worker's quarters of coverage (payment into the system four times per year) and the date the individual is deemed to be last insured for Title II benefits. Ordinarily, an individual is not entitled to Title II benefits if she is working. However, there is a narrow class of cases in which the individual is engaged in part-time work activity that results in additional quarters of coverage but does not rise to the level of substantial gainful activity (SGA). An individual's earnings record for any given year posts at the beginning of the next year.

The record before the ALJ contains a "DISCO DIB Insured Status Report" with a "run date" of August 10, 2009 (AR, pp. 575-576). The report contemplated the plaintiff's earnings record through 2008, but her earnings from 2009 had not yet been posted. The report indicated a DLI of December 31, 2003. This was the DLI found by the ALJ in his written decision.

At the outset of the administrative hearing held on December 3, 2009, counsel alerted the ALJ to the fact that, due to the plaintiff's part-time work activity in 2009, beginning January 1, 2010, the plaintiff's DLI was expected to be extended from her prior DLI of December 31, 2003, to some future date (AR, pp. 685-686). At the hearing, the plaintiff described her part-time work, not rising to the level of SGA, as a receptionist at Nolan Insurance Company (AR, pp. 704-705).

On September 17, 2010, the same date that she filed her fact and law summary herein, the plaintiff obtained her insured status report with a "run date" of September 17, 2010, <u>after</u> her 2009 earnings had been posted. The plaintiff has appended a copy of the report to her fact and law summary (Docket Entry No. 10). The report indicates that the plaintiff earned four quarters of coverage in 2009, with total earnings of $7,078, and a DLI of December 31, 2010. Based upon a comparison of the insured status report that was before the ALJ (AR, pp. 575-576) and the one submitted by the plaintiff with her fact and law summary (Docket Entry No. 10), it appears that the plaintiff's part-time work activity in 2009, extended her DLI from December 31, 2003, to December 31, 2010.

**Dr. Paul's testimony**

As indicated above, at the outset of the administrative hearing held on December 3, 2009, counsel alerted the ALJ to the possibility of an extended DLI (AR, pp. 685-686). In his written decision dated January 8, 2010, Judge Kimberlin did not mention the DLI issue. The ALJ appears simply to have assumed or taken it for granted that the plaintiff's DLI remained December 31, 2003, despite the fact that as of January 1, 2010, the plaintiff's earnings from 2009 had been posted. Nevertheless, at the hearing, the ALJ appears to have taken the possibility of an extended DLI quite seriously. Indeed, the ALJ's questioning of the psychological expert, Dr. Paul, as a whole reflects a meticulous awareness of a potential need to know the plaintiff's mental limitations during two distinct time frames. After counsel warned of the possibility of an extended DLI, the ALJ proposed as follows (AR, pp. 686-687):

> **ALJ:** All right. Well, the way I was thinking of approaching this case is, as far as the hearing today, was take the testimony first of the psychologist based upon the evidence in the record and see if he can render an opinion as to what emotional impairments, if any, this lady had on or before [December 31, 2003] and then tying that up to the current time to see where we stand there. Any problem with that?
>
> **Counsel:** I don't have a problem with that. No, no problem.

Dr. Paul testified that the plaintiff would have the restrictions summarized in ALJ's Finding No. 5, supra, both on or before December 31, 2003, and "through the current time" (AR, pp. 689-690, 696-698, and 714).

**Discussion**

The plaintiff's first contention upon judicial review is that the ALJ's decision erroneously found a DLI of December 31, 2003. Based upon the insured status report with a "run date" of September 17, 2010, which the plaintiff has appended to her fact and law summary (Docket Entry No. 10), the magistrate judge concurs with the plaintiff that the ALJ's decision is erroneous and that, as of the ALJ's decision dated January 8, 2010, the correct DLI was December 31, 2010. Nevertheless, the undersigned concludes that the error was harmless in light of Dr. Paul's testimony that the same mental limitations apply both on or before December 31, 2003, and through the current time. In other words, although the ALJ found that the plaintiff "was not under a disability, as defined in the Social Security Act, at any time from May 15, 2002, the alleged onset date, through December 31, 2003, the date last insured" (Finding No. 11), the evidence would equally well have supported a finding that the plaintiff was not under a disability through the date of the ALJ's decision.

Judicial review does not contemplate a quest for administrative perfection. Where the evidence as a whole supports the Commissioner's ultimate finding of lack of disability and there is no reasonable probability of a different result upon remand to correct an identified error, a reviewing court should deem the error to be harmless and decline to disturb the Commissioner's final decision. See *Odette v. Commissioner*, 2010 WL 2104300 (E.D.Mich.) (finding the ALJ's determination of the claimant's DLI was harmless error where the ALJ had considered the entire record and the decision did not "turn on Plaintiff's date last insured").

**Discussion**

The plaintiff's first contention upon judicial review is that the ALJ's decision erroneously found a DLI of December 31, 2003. Based upon the insured status report with a "run date" of September 17, 2010, which the plaintiff has appended to her fact and law summary (Docket Entry No. 10), the magistrate judge concurs with the plaintiff that the ALJ's decision is erroneous and that, as of the ALJ's decision dated January 8, 2010, the correct DLI was December 31, 2010. Nevertheless, the undersigned concludes that the error was harmless in light of Dr. Paul's testimony that the same mental limitations apply both on or before December 31, 2003, and through the current time. In other words, although the ALJ found that the plaintiff "was not under a disability, as defined in the Social Security Act, at any time from May 15, 2002, the alleged onset date, through December 31, 2003, the date last insured" (Finding No. 11), the evidence would equally well have supported a finding that the plaintiff was not under a disability through the date of the ALJ's decision.

Judicial review does not contemplate a quest for administrative perfection. Where the evidence as a whole supports the Commissioner's ultimate finding of lack of disability and there is no reasonable probability of a different result upon remand to correct an identified error, a reviewing court should deem the error to be harmless and decline to disturb the Commissioner's final decision. See *Odette v. Commissioner*, 2010 WL 2104300 (E.D.Mich.) (finding the ALJ's determination of the claimant's DLI was harmless error where the ALJ had considered the entire record and the decision did not "turn on Plaintiff's date last insured").

Next, the plaintiff argues that the mental limitations identified by Dr. Paul are not supported by substantial evidence. Specifically, she argues that the ALJ erred in not giving controlling weight to the completion of the standard mental assessment form on August 29, 2005, by her treating psychiatrist, Louis Mudd. Dr. Mudd found, among other things, that the plaintiff has "no useful ability" to deal with the public and to deal with work stresses and only a "fair" ability to function in twelve remaining areas (AR, pp. 311-312). The vocational expert (VE) testified that acceptance of Dr. Mudd's findings would require an ultimate finding of disability (AR, p. 721).

In his written decision, the ALJ stated that he rejected Dr. Mudd's disabling findings in reliance upon Dr. Paul's testimony (AR, pp. 529-530). Dr. Paul testified that Dr. Mudd's findings were inherently suspect because they indicate a person in need of intensive outpatient treatment if not psychiatric hospitalization, which apparently did not occur in this case (AR, pp. 699-700). Dr. Paul further testified that he was uncomfortable with Dr. Mudd's diagnosis of "severe depression" and that he was more comfortable with diagnoses more in line with those given by Steve Webne, Ph.D., in January of 2007 (i.e, mood disorder, not otherwise specified, generalized anxiety disorder, and partner relational problems) and by Jason Stamper, D.O., in November of 2003 (i.e., mood disorder, not otherwise specified) (AR, pp. 182, 393, and 697). Finally, Dr. Paul testified that the current period shows general assessment of functioning (GAF) scores "in a range consistent with moderate limitations ... say GAF of 54, 55" (AR, p. 698).

A treating source's "medical opinion" is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2). As a threshold matter, the court must determine whether an opinion by a treating source is a legitimate

10

"medical opinion" as opposed to an opinion on an issue "reserved to the Commissioner." An opinion that is tantamount to a finding of disability, or that is "dispositive of a case" or "would direct the determination of decision of disability," is of the latter type and is entitled to no "special significance." 20 C.F.R. § 404.1527(e). The magistrate judge concludes that Dr. Mudd's disabling findings were not legitimate medical opinions. Dr. Mudd did not "know," in the sense of an objective medical fact, that if properly motivated, the plaintiff would have "no useful ability" to deal with the public and deal with work stresses. These ultimate issues are more properly within the province of the fact finder (i.e., ALJ) based upon a consideration of the medical and non-medical evidence as a whole. Furthermore, for the reasons identified by Dr. Paul and discussed in the preceding paragraph, supra, even if we were to treat Dr. Mudd's findings as "medical opinions," they are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "inconsistent with the other substantial evidence." Hence, the ALJ did not err in declining to give them controlling weight. Dr. Paul's assessment of the plaintiff's mental limitations was supported by substantial evidence.

Finally, the plaintiff argues that the ALJ erred in finding that her insulin-dependent diabetes mellitus did not result in a "severe," or vocationally-significant, limitation satisfying the so-called duration requirement, to-wit, it "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The plaintiff attempts to rely upon raw medical findings, such as blood sugar readings, and temporary flare-ups as satisfying the foregoing requirements. However, the argument is unpersuasive because neither the plaintiff nor this court is qualified to interpret raw medical data in functional terms. On April 7, 2004, the non-examining state agency program physician, H.T. Anzures, found that the plaintiff's Type I Diabetes Mellitus

is "non-severe" (AR, p. 216). The ALJ found that the treatment records show that the plaintiff's diabetes is "stable and controlled with an insulin pump with no residuals, ... minimal diabetic retinopathy [and] no impact on [her] vision" (AR, p. 527). The magistrate judge concludes that the plaintiff failed to provide a medical opinion establishing a severe diabetic impairment.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, any party shall have a period of fourteen (14) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within fourteen (14) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each fourteen (14) day period above pursuant to Fed.R.Civ.P. 6(d), for a total of seventeen (17) working days.

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).